IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHELTER MUTUAL INSURANCE COMPANY,
as subrogee of David Meadows and Brenda Meadows,
and DAVID MEADOWS and BRENDA MEADOWS                PLAINTIFFS

vs.                         NO. 5:11-CV-05079-JLH

TRANE, INC., REGAL-BELOIT CORPORATON,
RBC MANUFACTURING CORPORATION, and
SENSATA TECHNOLOGIES, INC.                          DEFENDANTS

### PLAINTIFFS' SECOND AMENDED COMPLAINT

**COME NOW,** SHELTER MUTUAL INSURANCE COMPANY, as subrogee of David and Brenda Meadows, and DAVID MEADOWS and BRENDA MEADOWS and file this Plaintiffs' Second Amended Complaint and for their cause of action against TRANE, INC., REGAL-BELOIT CORPORATION, RBC MANUFACTURING CORPORATION, and SENSATA TECHNOLOGIES would respectfully show unto the Court the following:

PARTIES

1.  SHELTER MUTUAL INSURANCE COMPANY (hereinafter "Plaintiff SHELTER") is an insurance company duly licensed to sell insurance in Arkansas. At all times material herein, Plaintiff SHELTER provided insurance coverage to David Meadows and Brenda Meadows (hereinafter "Plaintiff MEADOWS" or "the Meadows") under policy number 03-79-2115702-1 ("subject policy") which covered the property owned by Plaintiff MEADOWS

located at 201 W. Laura, Rogers, Arkansas, including other appurtenances and contents therein (hereinafter "subject property").

2. TRANE, INC. (hereinafter "Defendant TRANE") is a foreign corporation not licensed to do business in Arkansas and has no registered agent for service of process in Arkansas. This corporation, at all times material herein, had minimum contacts with the State of Arkansas, in that it distributed products for sale to and use by consumers in this state, and more particularly Plaintiff MEADOWS. This defendant has been served, has filed an answer, is before the court, and can be served through its attorney of record.

3. At all times material herein, Defendant TRANE designed, manufactured and/or sold the Trane system and its components, including the subject furnace and its components, which the Plaintiff MEADOWS purchased and used at the subject property, which furnace and components caused the fire referenced hereinafter.

4. REGAL-BELOITT CORPORATION (hereinafter "Defendant REGAL-BELOITT") is a foreign corporation not licensed to do business in Arkansas and has no registered agent for service of process in Arkansas. This corporation, at all times material herein, had minimum contacts with the State of Arkansas, in that it distributed products for sale to and use by consumers in this state, and more particularly Plaintiff MEADOWS. This defendant has been served, has filed an answer, is before the court, and can be served through its attorney of record.

5. In its Answer filed in this case on March 29, 2011, Defendant REGAL-BELOITT denied that it manufactured the fan motor and pled affirmatively that "the fan motor referred to in paragraph 3 of plaintiffs' Complaint was manufactured by RBC Manufacturing Corporation, which is a separate legal entity/corporation and a subsidiary of Regal-Beloitt Corporation." Prior

to REGAL-BELOITT'S Answer being filed in this case on March 29, 2011, it was Plaintiffs' belief that Defendant REGAL-BELOITT designed, manufactured and/or sold the fan motor, which was a component of the TRANE system and furnace, referenced in paragraph 2 above. A notice of claim letter was mailed by certified mail, return receipt requested, to REGAL-BELOITT on April 30, 2008, wherein Plaintiffs' notified Defendant REGAL-BELOITT of the subject fire, of its potential claim, and stated that REGAL-BELOITT had been identified by Don Taylor, Attorney for Defendant TRANE, as being one of the component part manufacturers. Thereafter, Plaintiffs' attorney communicated with Ms. Charldene S. Schneier of the legal department of REGAL-BELOITT regarding inspections. On December 15, 2008, Shannon Fant notified Plaintiffs' attorney by email, "By way of introduction, please note that our office has been retained by Regal Beloit Corporation and its insurer in regards to the captioned fire loss, and I will attend the inspection of the fan motor tomorrow along with Bob Steffen of RBC and Jim Finneran of ElectroTek Consultants. I understand RBC's in house counsel already advised you that a representative would be present. I look forward to meeting you tomorrow." Thereafter, an inspection with REGAL-BELOITT'S representatives occurred on December 16, 2008. Following this inspection, there followed various communications with Mr. Fant. At no time, did Defendant REGAL-BELOITT or any of its representatives advise that the fan motor was actually manufactured by RBC Manufacturing Corporation. Further, information on the fan motor itself identifies the motor as a "General Electric commercial motor, manufactured by Regal-Beloit." If Defendant REGAL-BELOITT has been incorrectly identified and named as a proper party to this proceeding, then plaintiffs have done so simply due to misnomer.

      6.    On information and belief, RBC MANUFACTURING CORPORATION

(hereinafter "Defendant RBC MANUFACTURING") manufactures motors in North America. The company was formerly known as Marathon Electric Manufacturing Corporation and changed its name to RBC Manufacturing Corporation in July, 2008. The company was founded in 1913 and is based in Wausau, Wisconsin. RBC Manufacturing Corporation operates as a separate legal entity/corporation, but is a subsidiary of REGAL-BELOIT, as admitted by Defendant REGAL-BELOITT in its Answer.

7.     On information and belief, RBC MANUFACTURING CORPORATION (hereinafter "Defendant RBC MANUFACTURING") is a foreign corporation not licensed to do business in Arkansas and has no registered agent for service of process in Arkansas. This corporation, at all times material herein, had minimum contacts with the State of Arkansas, in that it distributed products for sale to and use by consumers in this state, and more particularly Plaintiff MEADOWS. On information and belief, Defendant RBC MANUFACTURING's corporate office is located at 100 East Randolph Street, Wausau, Wisconsin and process can be served by serving its agent for service in the state of Wisconsin, as follows:

> National Registered Agents, Inc.
> 901 South Whitney Way
> Madison, WI 53711

8.     Upon information furnished by Defendant REGAL-BELOITT, its parent corporation, Defendant RBC MANUFACTURING, at all times material herein, designed, manufactured and/or sold the fan motor, which was a component of the TRANE system and furnace, referenced in paragraph 2 above.

9.     Pursuant to F.R.C.P. 15 ( c) this amendment naming RBC MANUFACTURING as a defendant should relate back to the date of the original pleading in this case. See also, *Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000). The amendment asserts a claim against RBC

MANUFACTURING that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading. RBC MANUFACTURING should be served with this pleading within the period provided by F.R.C.P. 4 (m). Further, Defendant RBC MANUFACTURING received such notice of the action that it will not be prejudiced in defending on the merits and knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

10. SENSATA TECHNOLOGIES, INC. (hereinafter "Defendant SENSATA TECHNOLOGIES") is a foreign corporation not licensed to do business in Arkansas and has no registered agent for service of process in Arkansas. This corporation, at all times material herein, had minimum contacts with the State of Arkansas, in that it distributed products for sale to and use by consumers in this state, and more particularly Plaintiff MEADOWS. This defendant has been served, has filed an answer, is before the court, and can be served through its attorney of record.

11. At all times material herein, Defendant SENSATA TECHNOLOGIES manufactured the thermal protector used in the fan motor, which was a component of the TRANE furnace, referenced in paragraph 2 above (hereinafter "subject thermal protector").

12. Plaintiff MEADOWS and Plaintiff SHELTER are at times collectively referred to as "plaintiffs".

13. Defendants TRANE, REGAL-BELOIT, RBC MANUFACTURING, and SENSATA TECHNOLOGIES are sometimes collectively referred to as "defendants."

## JURISDICTION AND VENUE

14. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1332 by reason that the amount in controversy, being in excess of $230,000.00, is above the statutory minimum

amount of this Court's federal diversity jurisdiction and, based on information and belief, there is complete diversity of citizenship. Venue is proper in this court, in that Washington County is the county in which all or a part of plaintiffs' causes of action occurred.

## FACTUAL BACKGROUND

15.   On or about February 26, 2008, at approximately 10:30 p.m., a fire occurred at the subject property of Plaintiff MEADOWS.

16.   A subsequent origin and cause investigation revealed that the fire was caused by a fan motor that locked up in the Trane furnace unit located on the west end of the subject property. The rear of the subject property was to the north and the front was to the south. Plaintiff MEADOWS had installed a Trane Air Conditioner and Furnace System ("Trane system") at the subject property. The Trane system consisted of a condensing unit outside and a furnace inside. In this case, Plaintiff Meadows installed two Trane systems, with two condensing units outside, one on west end of the subject property and one on the east side, and with two horizontal furnaces upstairs, one to the south of the room upstairs, on the west side, and one on the east end of the subject property. The west unit was a Trane XR 13, Model #2TTR3030A1000AA, Serial #61942YNSF and the east unit was a Trane XR 13, Model #2TTR3030A1000AA, Serial # 61942T25F. Investigation following the fire revealed that the thermostat for the furnace in the west end was in the heat position at the time of the fire. There was evidence the fire originated around the west end furnace (hereinafter "subject furnace"). There was arcing on the cord for the subject furnace approximately 6 inches from the plug. Further inspection revealed that the fan motor of the subject furnace was more probably the cause of the fire. Information on the motor revealed that the fan motor was a "General Electric commercial motor, manufactured by Regal-Beloit." It was a 1/3 horsepower, 115 volt, single

phase motor with 1075 RPM, bearing Model No. 5KCP39HGS599S (hereinafter "subject fan motor"). Imprinted in the stator were the letters "S99RYV." Inspection of the subject fan motor revealed that the squirrel cage was not rubbing on the fan shroud. This fan motor had locked up on the shaft. There was no oiling port for the sleeve bearings. There was play in the sleeve bearing on the shaft end. Fire temperatures within the subject fan motor had not reached temperatures sufficient to cause the bearing to lock up from the heat of the fire. Motors which lock up due to fire exposure result from the aluminum within the rotor melting and dripping down on the stator and re-solidifying. This was not the case. There was oil in the sleeve bearing of the subject fan motor. If the oil had burned by the fire, there would be no remnants of oil in the sleeve bearing. Plastic insulation within the motor was unburned. The bearing on the end opposite the shaft had not locked up, which also indicates that the fire exposure was not enough to cause the bearing to lock up. When the subject fan motor locked up, the burner of the subject furnace overheated due to lack of air flow and ignited nearby combustibles. This caused the arcing on the cord and the arcing on the 8/2 with ground cable.

17. All other potential ignition sources were eliminated as the cause of the fire.

18. All parties involved with the manufacture of the subject furnace were put on notice and were given the opportunity to investigate and inspect the fire scene and products involved in this fire loss, with the exception of Defendant SENSATA TECHNOLOGIES, who was only recently identified by Defendant REGAL-BELOIT as being the manufacturer of the subject thermal protector. At the inspection on December 16, 2008, representative of REGAL-BELOIT advised plaintiffs that they were going to put the manufacturer of the thermal protection device on notice, but could not identify who that manufacturer was at that time. Thereafter, plaintiffs requested the name of the manufacturer from REGAL- BELOIT and requested a copy of the

notice letter once it was sent. No notice letter was ever received, nor was the name of the thermal protection device provided to plaintiffs by REGAL-BELOIT until January 31, 2011. Following discovery of the identity of SENSATA TECHNOLOGIES as the manufacturer of the subject thermal protector by REGAL-BELOIT's representative, plaintiffs filed suit against Defendant SENSATA TECHNOLOGIES on February 18, 2011.

19. At all times material, Defendants were engaged in the business of designing, manufacturing, assembling, selling (or otherwise distributing) the subject Trane system or its components, i.e., the subject furnace, subject fan motor, and subject thermal protector. At the time of the fire in this case, the said Trane system, subject furnace, subject fan motor and subject thermal protector, as designed, manufactured, distributed, and assembled, were defective, rendering them unreasonably dangerous. At all times material herein, Defendants exercised complete control over the design, manufacture, sale and assembly of the subject Trane system, subject furnace, subject fan motor and subject thermal protector, and their component parts.

20. The fire spread from its point of origin throughout the subject property and caused substantial losses in an amount in excess of $230,000.00. These damages to Plaintiff MEADOWS' subject property occurred as a direct result of the defective condition of the subject Trane system, subject furnace, subject fan motor and/or subject thermal protector, and their component parts, and other acts of Defendants, as hereinafter more particularly set forth.

## COUNT 1 - NEGLIGENCE

21. As for their first cause of action against Defendants, plaintiffs re-state and re-allege paragraphs 1- 20 above as if fully set forth herein and would further show unto the Court the following:

22. Defendant TRANE was negligent in, but not limited to, each of the following:

    a.    In failing to properly manufacture, assemble, and sell the subject Trane system, subject furnace, and their component parts so that these products were suitable for the specific and general purposes for which they were intended;

    b.    In failing to insure that the materials used in the manufacturing and assembly of the subject Trane system, subject furnace, and their component parts, were appropriate for the purpose for which they were intended;

    c.    In failing to adequately and properly supervise its employees who were involved in the manufacture, assembly, and sale of the subject Trane system, subject furnace, and their component parts, as a prudent manufacturer, distributor, and employer should have done in the same or similar circumstances;

    d.    In failing to insure that the subject Trane system, subject furnace, and their component parts, were manufactured, sold, and assembled with due care;

    e.    In failing to properly warn foreseeable users such as the plaintiffs of the dangers inherent in the use of the subject Trane system, subject furnace, and their component parts, as manufactured, assembled, sold, and used by plaintiffs.

    f.    In failing to adequately test the subject Trane system, subject furnace, and their component parts for safety which a reasonable and prudent manufacturer would have done in the same or similar circumstances;

    h.    In failing to insure that the materials used in the subject Trane system, subject furnace, and their component parts were appropriate for the purpose for which they were intended; and

    i.    In failing to follow reasonable and prudent procedures in manufacturing, assembling, and selling the subject Trane system, subject furnace, and their component parts.

23.    Defendant REGAL-BELOITT and/or Defendant RBC MANUFACTURING, as manufacturer of the subject fan motor and its component parts, was/were negligent in, but not limited to, each of the following:

    a.    In failing to properly manufacture, assemble, and sell the subject fan motor and its component parts so that it was suitable for the specific and general purposes for which it was intended;

 b. In failing to insure that the materials used in the manufacturing and assembly of the subject fan motor and its component parts, were appropriate for the purpose for which it was intended;

 c. In failing to adequately and properly supervise its employees or other manufacturers who were involved in the manufacture, assembly, and sale of the subject fan motor and its component parts, as a prudent manufacturer, distributor, and employer should have done in the same or similar circumstances;

 d. In failing to insure that the subject fan motor and its component parts, were manufactured, sold, and assembled with due care;

 e. In failing to properly warn foreseeable users such as the plaintiffs of the dangers inherent in the use of the subject fan motor and its component parts, as manufactured, assembled, sold, and used by plaintiffs.

 f. In failing to adequately test the subject fan motor and its component parts for safety which a reasonable and prudent manufacturer would have done in the same or similar circumstances;

 h. In failing to insure that the materials used in the subject fan motor and its component parts were appropriate for the purpose for which they were intended; and

 i. In failing to follow reasonable and prudent procedures in manufacturing, assembling, and selling the subject fan motor and its component parts.

24. Defendant SENSATA TECHNOLOGIES was negligent in, but not limited to, each of the following:

 a. In failing to properly manufacture, assemble, and sell the subject thermal protector and its component parts so that it was suitable for the specific and general purposes for which it was intended;

 b. In failing to insure that the materials used in the manufacturing and assembly of the subject thermal protector and its component parts were appropriate for the purpose for which it was intended;

 c. In failing to adequately and properly supervise its employees who were involved in the manufacture, assembly, and sale of the subject thermal protector and its component parts, as a prudent manufacturer, distributor, and employer should have done in the same or similar circumstances;

      d.      In failing to insure that the subject thermal protector and its component parts were manufactured, sold, and assembled with due care;

      e.      In failing to properly warn foreseeable users such as the plaintiffs of the dangers inherent in the use of the subject thermal protector and its component parts, as manufactured, assembled, sold, and used by plaintiffs.

      f.      In failing to adequately test the subject thermal protector and its component parts for safety which a reasonable and prudent manufacturer would have done in the same or similar circumstances;

      h.      In failing to insure that the materials used in the subject thermal protector and its component parts were appropriate for the purpose for which it was intended; and

      i.      In failing to follow reasonable and prudent procedures in manufacturing, assembling, and selling the subject thermal protector and its component parts.

25.    Plaintiffs cannot more specifically allege the acts of negligence on the part of the defendants for the reason facts in that regard are peculiarly within the knowledge of said defendants, and, in the alternative, in the event plaintiffs are unable to prove specific acts of negligence on the part of the defendants, plaintiffs rely on the doctrine of *res ipsa loquitur*. In this connection, plaintiffs state that the instrumentality(ies) causing the fire, i.e. the subject Trane system, subject furnace, subject fan motor and/or subject thermal protector, and their component parts was/were at all times in the exclusive control of the respective defendant manufacturer and that the manufacture, assembly, and sale of these products were all in the exclusive control of the defendant manufacturing same. Further, the defendants had exclusive control over what parts were utilized in the manufacture, assembly, sale and use of their product and plaintiffs had no means of ascertaining the method or manner in which the subject products were manufactured, assembled, and sold. The instrumentality which caused the loss was built into the Trane system, the subject furnace, subject fan motor and/or their component parts, were under the respective

defendants' control and/or direction, and came into the plaintiffs' possession in the same condition they were in when they left the control of the defendants. The occurrence causing the harm alleged herein was one which, in the ordinary course of events, would not have occurred without negligence on the part of the defendants, which negligence was a proximate cause of the injuries and damages alleged herein.

## COUNT 2 - BREACH OF WARRANTY

26. Plaintiffs restate and reallege paragraphs 1 - 25 as if fully stated herein and would further show the Court the following:

27. Defendant TRANE was the manufacturer of the subject Trane system and its component parts and the subject furnace and its component parts and impliedly warranted that these products, as manufactured, assembled and sold were merchantable, reasonably fit for the ordinary purposes for which such goods are used, would pass without objection in the trade under its contract description, and that such products were safe in use.

28. Defendant REGAL-BELOITT and/or alternatively RBC MANUFACTURING was the manufacturer of the subject fan motor and its component parts and impliedly warranted that its product(s), as manufactured, sold, installed and used, was/were merchantable, reasonably fit for the ordinary purposes for which such goods are used, would pass without objection in the trade under its contract description, and that such products and instructions were safe in use.

29. Defendant SENSATA TECHNOLOGIES was the manufacturer of the subject thermal protector and its component parts and impliedly warranted that its product(s), as manufactured, sold, installed and used, was/were merchantable, reasonably fit for the ordinary purposes for which such goods are used, would pass without objection in the trade under its contract description, and that such products and instructions were safe in use.

30. At the time they were manufactured, assembled, and thereafter used, the subject Trane system, subject furnace, subject fan motor and subject thermal protector and their component parts were not as warranted but were defective and not fit for the purpose for which they were used and would not pass without objection in the trade, and were unsafe.

31. All acts precedent to plaintiffs filing this claim have been performed.

## COUNT 3 - STRICT LIABILITY

32. Plaintiffs restate and reallege paragraphs 1 - 31 as if fully stated herein and would further show unto the Court the following:

33. Defendant TRANE is the "manufacturer" and "supplier" of the the subject Trane system and its component parts and subject furnace and its component parts, as those terms are defined in 16-116-102 of the Arkansas Product Liability Act of 1079 (hereinafter "Product Liability Act"). The subject Trane system and its component parts, is a "product" as defined in said act. The subject furnace and its component parts, is a "product" as defined in said act.

34. The subject Trane system and its component parts and subject furnace and its component parts were defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquired and/or used the product, as further defined in the Product Liability Act.

35. Defendant TRANE knew the subject Trane system and its component parts and subject furnace and its component parts were being purchased and used without inspection by plaintiffs for defects such as existed and further, that the defects in the subject Trane system and its component parts and subject furnace and its component parts would not be readily observable or detected by plaintiffs. At the time of the fire loss, the subject Trane system and its component parts and subject furnace and its component parts were being used in a reasonably foreseeable

manner, but were unsafe and dangerous for use by the plaintiffs. The subject Trane system and its component parts and subject furnace and its component parts were in the same condition immediately prior to the fire loss as when originally manufactured and sold and directed to be used by this defendant.

36. As a result of the actions of the Dendant TRANE, as manufacturer, assembler, and supplier, Defendant TRANE is strictly liable to plaintiffs for the damages resulting from the fire loss described herein.

37. Defendant REGAL-BELOITT and/or alternatively Defendant RBC MANUFACTURING is the "manufacturer" and "supplier" of the subject fan motor and its component parts, as those terms are defined in 16-116-102 of the Arkansas Product Liability Act of 1079 (hereinafter "Product Liability Act"). The subject fan motor is a "product" as defined in said act. The subject fan motor is a "product" as defined in said act.

38. The subject fan motor and its component parts was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquired and/or used the product, and as further defined in the Product Liability Act.

39. Defendant REGAL-BELOITT and/or alternatively Defendant RBC MANUFACTURING knew the subject fan motor and its component parts was being purchased and used without inspection by plaintiffs for defects such as existed and further, that the defects in the subject fan motor and its component parts would not be readily observable or detected by plaintiffs. At the time of the fire loss, the subject fan motor and its component parts were being used in a reasonable foreseeable manner, but were unsafe and dangerous for use by the plaintiffs. The subject fan motor and its component parts were in the same condition immediately prior to

the fire loss as when originally manufactured and sold and directed to be used by this defendant.

40. As a result of the actions of the Dendant REGAL-BELOITT and/or alternatively RBC MANUFACTURING, as manufacturer, assembler, and supplier of this defective product, Defendant REGAL-BELOITT and/or alternatively RBC CORPORATION is/are strictly liable to plaintiffs for the damages resulting from the fire loss described herein.

41. Defendant SENSATA TECHNOLOGIES is the "manufacturer" and "supplier" of the subject thermal protector and its component parts, as those terms are defined in 16-116-102 of the Arkansas Product Liability Act of 1079 (hereinafter "Product Liability Act"). The subject thermal protector and its component parts is a "product" as defined in said act.

42. The subject thermal protector and its component parts was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquired and/or used the product, and as further defined in the Product Liability Act.

43. Defendant SENSATA TECHNOLOGIES knew the subject thermal protector and its component parts were being purchased and used without inspection by plaintiffs for defects such as existed and further, that the defects in subject thermal protector and its component parts would not be readily observable or detected by plaintiffs. At the time of the fire loss, the subject thermal protector and its component parts were being used in a reasonable foreseeable manner, but were unsafe and dangerous for use by the plaintiffs. The subject thermal protector and its component parts were in the same condition immediately prior to the fire loss as when originally manufactured and sold and directed to be used by this defendant.

44. As a result of the actions of the Defendant SENSATA TECHNOLOGIES, as manufacturer, assembler, and supplier of the defective thermal protector, Defendant SENSATA

TECHNOLOGIES is strictly liable to plaintiffs for the damages resulting from the fire loss described herein.

## CAUSATION

45.  Defendants' acts of misfeasance, nonfeasance, or both, whether intentional, grossly negligent, negligent, or inadvertent, were a proximate cause of the injuries and damages sustained by the plaintiffs.

## DAMAGES

46.  As a result of the acts of the Defendants, Plaintiff MEADOWS sustained damages allowable under Arkansas law to real and personal property of Two Hundred Thirty Eight Thousand Three Hundred and 71/100 Dollars ($238,300.71).

47.  Plaintiff SHELTER provided insurance coverage to Plaintiff MEADOWS pursuant to the subject policy and paid Plaintiff MEADOWS for their losses, referenced in paragraph 46 above, less Plaintiff MEADOWS' deductible of $1,000.00. In accordance with said insurance policy and the laws of the state of Arkansas, where the above policy was written and where the loss occurred, Plaintiff SHELTER, as subrogee of Plaintiff MEADOWS, is entitled to seek reimbursement from Defendants for damages allowable under Arkansas law, not to exceed the amount it paid its insured pursuant to obligations under the above referenced policy of insurance.

48.  The total damages claimed in this lawsuit by both plaintiff MEADOWS and Plaintiff SHELTER collectively do not exceed Two Hundred Thirty Eight Thousand Three Hundred and 71/100 Dollars ($238,300.71).

**WHEREFORE**, PLAINTIFFS, SHELTER MUTUAL INSURANCE COMPANY, as subrogee of David Meadows and Brenda Meadows, and DAVID MEADOWS, BRENDA MEADOWS pray for judgment against Defendants TRANE, INC., REGAL-BELOITT

CORPORATION and/or alternatively RBC MANUFACTURING CORPORATION, and SENSATA TECHNOLOGIES, INC. in the amount of Two Hundred Thirty Eight Thousand Three Hundred and 71/100 Dollars ($238,300.71), and for such other and further non-monetary relief that this Court deems just and proper.

**JURY TRIAL DEMANDED**

**ATTORNEY'S LIEN CLAIMED**

Respectfully submitted:

By: /s/ Ralph Myers, III
─────────────────────────
Ralph Myers, III, ABN 84112
Attorney at Law
201 N. Edmond Avenue
McCrory, Arkansas 72101
(870)731-5201 (phone)
(870)731-5716 (fax)

**ATTORNEY FOR PLAINTIFFS**

OF COUNSEL:

David O. Kemp, Esq.
Attorney at Law
9524 Whitehurst Drive (75243)
Post Office Box 741057
Dallas, TX 75374
(214) 987-0003 (Phone)
(214) 987-0182 (Fax)

## CERTIFICATE OF SERVICE

I hereby state that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following on this the 22nd day of April, 2011.

| | |
|---|---|
| Mr. Don A. Taylor | dtaylor@davis-firm.com  lkeys@davis-firm.com |
| Mr. Shannon L. Fant | sfant@bassettlawfirm.com  sgriffith@bassettlawfirm.com |
| Mr. Jeffrey W. Puryear | jpuryear@wlpmlaw.com  scook@wlpmlaw.com |

/s/ Ralph Myers, III
_____
Ralph Myers, III